Robert Earl HOSKINS, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8805–CR–00441.

Supreme Court of Indiana.

Dec. 12, 1990.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was tried to a jury and found guilty of attempted murder, a Class A felony, I.C. 35–42–1–1; 35–41–5–1, and he received the presumptive sentence for that crime, which is thirty years, I.C. 35–50–2–4. The jury also acquitted appellant on charges of murder and attempted murder. Appellant now brings this direct appeal, challenging his conviction and sentence on several issues, which have been rearranged and consolidated into the following six: 1) whether the evidence supporting his conviction was sufficient; 2) whether the trial court erred in refusing two of his tendered instructions; 3) whether the State sufficiently disproved his claim of self-defense; 4) whether the verdict rendered in this case represented a compromise verdict; 5) whether the State made an adequate showing that a videotaped confession by appellant was given voluntarily; and 6) whether the trial court committed error in its sentencing procedure.

The uncontradicted evidence at trial showed that on February 16, 1987, Jo Ann Dale and her two adult daughters, Belinda Dale and Janice Todd, were shot by appellant at the residence which he and Belinda shared. Appellant and Belinda's relationship had shown signs of deteriorating, and there had been a confrontation earlier that evening between appellant and the two younger women. The shootings occurred when Belinda, Janice, Jo Ann, and Jo Ann's boyfriend returned to the house later to retrieve some of Belinda's belongings. Jo Ann was killed; Belinda and Janice were seriously wounded, but survived. After the shooting stopped, appellant searched Jo Ann's boyfriend and her purse for a gun, but did not find one. He voluntarily admitted the police when they arrived shortly thereafter.

The evidence regarding the events leading up to the shootings was in sharp conflict. The account given by Belinda and Janice was that, while their mother and her

boyfriend waited downstairs, the two of them argued with appellant in the hallway at the top of the stairs. Appellant pushed Janice, pulled a gun out of his pocket, and fired three shots at her. One of the bullets hit Janice in the chest, and one nipped Belinda's nose. Appellant then turned toward the stairwell, aimed, and fired at Jo Ann as she came running up the stairs. Belinda and appellant ran downstairs to look at Jo Ann, then went back upstairs to call for help. Belinda testified that appellant became very upset when the phone did not work and that he put the gun to her head and fired. She staggered to the bathroom, where Janice had dragged herself and gotten into the tub. Appellant followed Belinda into the bathroom and told Janice to get up. When she responded that she could not, he shot her two more times. Both bullets went through her upraised arm and into her jaw. Appellant then picked her up by an arm and a leg and put her on the floor by Belinda.

Appellant testified in his own defense that during the confrontation with Belinda and Janice earlier that evening, Janice made references to a hit man. He testified further that he had phoned the police after the women left, which was substantiated by other evidence. Appellant then began moving loads of furniture and clothing to a friend's house and, upon his return from one such trip, was verbally and physically accosted by Jo Ann, Belinda, and Janice. Jo Ann cursed him and said she had a gun with her. Appellant ran upstairs with the two younger women in pursuit, and Jo Ann and her boyfriend stayed downstairs. The three struggled as appellant tried to phone the police, and he heard footsteps on the stairs and Jo Ann repeating that she had a gun. Appellant broke away from Belinda and Janice, ran to a dresser, pulled out his gun, and fired a warning shot toward the stairs. The two young women set on him again and, in the ensuing struggle, the gun went off several times. Appellant testified that the shooting occurred only in the hallway and that he did not shoot Belinda a few moments later in the bedroom nor did he fire on Janice in the bathroom. Appel-

lant's defense at trial was that he was acting in self-defense.

## I. SUFFICIENCY OF THE EVIDENCE

Appellant's first claim on appeal is that the evidence supporting his conviction is insufficient. It is well established that this Court will neither reweigh the evidence nor judge the credibility of the witnesses, but will affirm the conviction if the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom provide probative evidence from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *James v. State* (1976), 265 Ind. 384, 354 N.E.2d 236. The evidence recited above provides a sufficient basis upon which a reasonable trier of fact could have inferred beyond a reasonable doubt that appellant attempted to murder Janice Todd. In *Dorris v. State* (1988), Ind., 531 N.E.2d 190, the evidence supporting the defendant's conviction for attempted murder was found to be sufficient despite conflicting evidence on the question of whether the gun was intentionally fired by the defendant, which was the testimony of the victim and four other witnesses, or accidentally discharged during a struggle, which was the testimony of the defendant. Likewise, here, the testimony of the victim, Janice Todd, and another eyewitness, Belinda Dale, that appellant aimed his gun at and shot Janice in the hallway and again in the bathroom is sufficient to support the conviction, notwithstanding appellant's conflicting version of the incident.

## II. INSTRUCTIONS

Appellant challenges the propriety of the refusal of two of his tendered instructions. He first argues that the trial court erred in refusing his tendered instruction on battery as a lesser included offense. In support of this argument, appellant cites *Johnson v. State* (1984), Ind., 464 N.E.2d 1309, where this Court found that it was not error for a trial court to give a battery instruction in a prosecution for attempted murder. Appellant points out that, in that case, the victim was shot during an argument and that the defenses raised were

accident and self-defense, and he argues that, by analogy, his tender of a battery instruction on the facts of his case was appropriate and that the trial court committed reversible error in refusing it.

Despite the factual similarities of the two cases, appellant's reliance on *Johnson* is misplaced. In *Johnson*, we stated that battery is not an inherently included offense of murder and then, by comparing the statutory elements of the lesser offense with the factual allegations set forth in the charge on the greater offense, we determined that the instruction was properly given. This same test for determining the propriety of giving an instruction, first examining the pertinent statutes and the charging instrument and then examining the evidence, was utilized in *Wedmore v. State* (1988), Ind., 519 N.E.2d 546, where this Court also stated that the State can, through the drafting of the charging instrument, foreclose to the defendant the tactical opportunity to seek conviction for a lesser offense. This is most typically accomplished by closely tracking the statutory definition of the offense and by inserting no additional language which might indicate an intention to charge a lesser offense. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463.

An examination of the statutes and the charging instrument here shows that the State did, in fact, draft its charge against appellant so as to foreclose to him the possibility of conviction on the lesser charge of battery. The pertinent statutes are the attempt statute, I.C. 35–41–5–1, which states that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime[,]" and the murder statute, I.C. 35–42–1–1, which states that "[a] person who knowingly or intentionally kills another human being ... commits murder[.]" The information here charged that appellant

did attempt to commit the crime of Murder, which is to knowingly kill another human being, to-wit: JANICE TODD, by engaging in conduct, to-wit: KNOWINGLY SHOOTING A DEADLY WEAPON, to-wit: A HANDGUN, at and against JANICE TODD, which constituted a substantial step toward the commission of said crime of Murder.

The narrow drafting of the information here, which closely tracked the language of the statutes defining the charged crime, is clearly distinguishable from the charge in *Johnson*, which was drafted sufficiently broadly as to make an instruction on battery appropriate:

The information charging the appellant with attempted murder states that he knowingly or intentionally shot a round of live ammunition from a pistol he held in his hands at the victim and that the round of ammunition struck and wounded the victim. The elements of battery are knowingly or intentionally touching another person in a rude, insolent, or angry manner resulting in serious bodily injury or by the use of a deadly weapon. Ind.Code § 35–42–2–1(3). The information can positively be stated to have put appellant on notice that he was charged with battery because the elements clearly coincide.

*Johnson*, 464 N.E.2d at 1311. The trial court did not err in refusing appellant's tendered instruction.

Appellant next contends that the trial court erroneously refused his tendered instruction 4 on mistake of fact. I.C. 35–41–3–7 provides:

It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.

When the State has made a prima facie case of guilt, the burden is upon the defendant to establish an evidentiary predicate of his mistaken belief of fact which is such that it could create a reasonable doubt in the jury's mind that the accused had acted with the requisite mental state. *Stoner v. State* (1982), Ind., 442 N.E.2d 983. If the defendant successfully establishes this predicate, he is entitled to an instruction on this feature of the case and to relate the

evidence to this instruction during final summation. Requiring the defendant to establish a factual basis for entitlement to a mistake instruction does not impermissively shift the burden of proof since the State retains the ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent, *Powers v. State* (1989), Ind., 540 N.E.2d 1225, which would in turn entail proof that there was no reasonably held mistaken belief of fact.

As noted above, the information charged that appellant attempted a knowing killing by knowingly shooting a handgun at Janice Todd. This Court has stated that "an act is done 'knowingly' ... if it is willed, is the product of a conscious design, intent or plan that it be done, and is done with an awareness of the probable consequences." *Horne v. State* (1983), Ind., 445 N.E.2d 976, 979. Appellant argues that the acts of the three victims created in him the mistaken belief that one of the women had a gun and that he was in more danger than he actually was. This evidence would satisfy the requirements that the mistake was of a matter of fact and was honestly and reasonably held. However, it does not satisfy the requirement that appellant's culpability be negated because even if believed, it would not have created in the jury's mind a reasonable doubt that appellant was unaware that he pointed his gun at Janice Todd and pulled the trigger five times or that he was unaware of the probable consequences that his conduct could have. ·

Rather, the evidence offered by appellant in support of his mistake of fact theory was actually evidence of justification supporting the predicate to his claim of self-defense. The legislature has identified as crimes certain acts which are committed by a person who has, at the time of the commission of the act, a specified state of mind. The successful mistake of fact defense precludes the imposition of criminal penalty, as does, for example, the defense of intoxication, because an element of the crime, namely, culpability or intent, is negated. In other words, because the act and the state of mind identified by the statute did not occur in criminal conjunction, there was no crime. The legislature has also created true affirmative defenses, such as entrapment or self-defense, which consist of elements which interdict criminal penalty for acts which would otherwise be punishable. A true affirmative defense is a defense not because the defendant acted without the requisite mental state, but because his knowing or intentional acts are excused or justified. *Melendez v. State* (1987), Ind., 511 N.E.2d 454. Here, the defense of self-defense was pleaded and argued, the jury had before it appellant's evidence of his justification in the use of deadly force, and the trial court gave full instructions on this issue. Appellant failed to establish the evidentiary predicate showing that he was entitled to a mistake of fact instruction. Such an instruction was not warranted in this case, and the trial court did not err in rejecting appellant's tendered instruction 4.

## III. SELF–DEFENSE

Appellant maintains that the State failed to produce evidence sufficient to overcome his claim that he acted in self-defense. This Court has stated that

> to prevail on a claim of self-defense, the defendant must have been in a place where he had a right to be, acted without fault, and acted in reasonable fear or apprehension of death or great bodily harm. The question of whether a person is justified in using deadly force to defend himself is one for the trier of fact to determine by consideration of all the facts bearing on that issue. Further, whether the State failed to negate the defense of self-defense beyond a reasonable doubt is treated in the same manner as any other challenge to the sufficiency of evidence. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed.

*Mendez v. State* (1986), Ind., 491 N.E.2d 532, 533 (emphasis and citations omitted). As in all challenges to the sufficiency of the evidence, this Court looks to the evidence, and the inferences to be drawn therefrom, most favorable to the verdict

and will not reweigh the evidence nor judge the credibility of the witnesses. *Id.*

The testimony of the victim and Belinda Dale that appellant shot Janice Todd as she lay wounded in the bathtub is sufficient evidence of probative value to negate beyond a reasonable doubt appellant's claim that he shot her in self-defense.

## IV. COMPROMISE VERDICT

■ Appellant was charged with two counts of attempted murder for the shootings of Belinda Dale and Janice Todd and with murder for the shooting of Jo Ann Dale. Some hours after beginning its deliberations, the jury sent a note out to the judge asking if there were any lesser offenses that could be considered under the two attempt counts; the judge responded that there were not. Appellant argues that this indicates that the two acquittals and one conviction subsequently rendered represented a compromise reached by the jury. He argues further that the jury must have accepted his version of the incident in order to acquit him of the charges as to the shootings of Jo Ann and Belinda and that therefore the not guilty verdicts on those counts and the guilty verdict on the charge as to the shooting of Janice were irreconcilable such that his conviction cannot stand. In *Hicks v. State* (1981), Ind., 426 N.E.2d 411, we explained that

> it is not within our province to attempt to interpret the thought process of the jury in arriving at their verdict.... The reason for allowing the jury to render verdicts, that are seemingly inconsistent, inheres within our system of jurisprudence. The jurors are the triers of fact, and in performing this function, they may attach whatever weight and credibility to the evidence as they believe is warranted.

*Id.* at 414. This Court does continue to review findings and verdicts to determine whether they are consistent; however, perfect logical consistency is not demanded and only extremely contradictory and irreconcilable verdicts warrant corrective action by this Court. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198. The verdicts here do not warrant such corrective action. The jury could have believed that the shootings of Belinda and Jo Ann and the initial shots fired at Janice were justified in self-defense and, consistent with that belief, the jury could further have found that appellant shot Janice two more times as she lay wounded in the bathtub and based the guilty verdict on the charge as to her on this conduct.

## V. VOLUNTARINESS OF STATEMENT

■ On the night of the incident, appellant made two statements to the police, both of which were videotaped. He argues on appeal that these tapes were erroneously admitted into evidence by the trial court because there is no showing on the tapes themselves that he knowingly and intelligently waived his *Miranda* rights. Although appellant's argument is that the tapes were *per se* excludable because the advisement of rights and his waiver of them do not appear on the tapes, he correctly states that the appropriate standard for evaluating the voluntariness of a waiver of rights is the totality of the circumstances test, citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Holleman v. State* (1980), 272 Ind. 534, 400 N.E.2d 123.

■ The evidence regarding the circumstances surrounding the statements given by appellant shows that appellant was given a *Miranda* advisement at the scene of the crime by Officer Dennis Hammer of the Marion County Sheriff's Department. Hammer testified that as he checked the conditions of the three women, summoned medical personnel, and searched appellant and Jo Ann's boyfriend for weapons, appellant kept repeating that the women had broken in and attacked him; Hammer told him to keep quiet and not to say anything. He read appellant his *Miranda* rights and asked if he understood them. Hammer testified that appellant responded, "Yes, I understand." Officer Michael Kelley of the Marion County Sheriff's Department testified that, upon arrival at the station, he ascertained that appellant understands

**578**

the English language and can read and write, then read appellant his rights and asked if he understood them. Kelley testified that appellant answered, "Yes, I understand what they are," and that he then signed a waiver of rights form and agreed to answer questions. Kelley testified that neither he nor anyone else made any threats or promises to induce appellant to forego his rights and that appellant did not indicate at any time during the questioning that he wanted to stop answering or to consult with an attorney.

Under the totality of these circumstances, we find that the State met the heavy burden imposed on it to prove beyond a reasonable doubt that appellant gave his statements voluntarily. *Roell v. State* (1982), Ind., 438 N.E.2d 298.

## VI. SENTENCING

■■■■ Appellant argues that the thirty-year sentence imposed by the trial court cannot stand because the court made no findings of aggravating and mitigating circumstances and because the sentence was excessive. However, this Court recently reaffirmed the rule set forth in *Finch v. State* (1987), Ind., 510 N.E.2d 673, that a sentencing judge is required to articulate his reasons for imposing a particular sentence only when deviating from the statutory presumptive sentence. *Winfrey v. State* (1989), Ind., 547 N.E.2d 272. Appellant received the presumptive sentence, and therefore it was not incumbent upon the sentencing judge to set forth the factors he considered in determining that this was the appropriate sentence. A sentence which falls within the statutory range will be reversed only if no reasonable person could consider the sentence appropriate given the particular offense and the particular offender. *Hill v. State* (1986), Ind., 499 N.E.2d 1103. On the basis of the record before us, we cannot say that the sentence imposed was manifestly unreasonable.

During the sentencing hearing, the trial court indicated its belief that attempted murder is nonsuspendable offense:

Counsel: .... We feel that this case is one that could be suspended below the minimum sentence. We would ask the Court to consider ...

Court: How do you suspend it below the minimum? Where do you get the authority ...

Counsel: It's not an enumerated offense under 35–52–2, Your Honor, in that this is Mr. Hoskins' first conviction of an A Felony or B Felony.

Court: Comes as a surprise to me, Mr. Cable, but keep going.

Appellant argues that this belief is erroneous and that he is entitled to a new sentencing hearing at which the suspendible nature of the sentence is considered in the determination of an appropriate sentence. This argument has already been decided adverse to appellant in *Haggenjos v. State* (1982), Ind., 441 N.E.2d 430, and need not be addressed further here.

Appellant's conviction and sentence are affirmed.

SHEPARD, C.J., and GIVAN,
PIVARNIK and DICKSON, JJ., concur.