**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 17 2013, 9:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NEIL L. WEISMAN**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT V. ALLEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1209-CR-408 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1201-FD-76

**May 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

During the afternoon hours of January 20, 2012, Robert V. Allen and Terrence Young took corrugated steel siding and an orange topped electrical box from a warehouse owned by Michael Morris and attempted to sell the items to a nearby scrap yard. Morris had not given Allen or Young permission to take or sell the items in question. Allen was subsequently charged with and convicted of Class D felony theft. At trial, Allen acknowledged that he took the items from Morris's property, but argued that he mistakenly believed that the items in question had been thrown away or abandoned by Morris. On appeal, Allen contends that the State failed to present sufficient evidence at trial to sustain his conviction because the State failed to disprove his mistake of fact defense. Concluding that the State met its burden of disproving Allen's mistake of fact defense, we affirm.

**FACTS AND PROCEDURAL HISTORY**

During the afternoon hours of January 20, 2012, Michael Morris was driving by a warehouse he owned when he saw "two gentlemen with a grocery cart loading scrap out of the north end of [his] building." Tr. p. 89. Morris saw the men load "[s]crap metal and an orange top electrical disconnect switch" in the cart. Tr. pp. 89-90. Morris noticed that the men were pushing the grocery cart full of scrap in the direction of a nearby scrap yard. After observing the men, Morris alerted an employee of the scrap yard that the two men were heading toward the scrap yard and called police.

Morris did not enter the warehouse at this time but rather continued to watch the men until police arrived. Officer Andrew Hines responded to Morris's call; spoke to Morris, who pointed out Allen and Young; and approached the men, who by this time, were "on the scale

2

where they receive their scrap metal at the scrap yard." Tr. p. 91. Once Officer Hines returned to the warehouse, he and Morris went to the part of the building where Morris had first seen the men loading the scrap metal into the grocery cart. Morris and Officer Hines followed footprints in the snow which went up to and inside Morris's warehouse. Morris noticed that the door to the warehouse had been pried open. Once inside the warehouse, Morris and Officer Hines saw snowy footprints, and Morris noticed that steel siding and an electrical control box were missing. Morris subsequently identified the items in the grocery cart as the items that belonged to him and had come from inside his warehouse. Morris indicated that he "absolutely" did not leave scrap outside of the warehouse. Tr. p. 98. He further indicated that he did not know Allen or Young or give either of them permission to take or sell the items in question.

On January 21, 2012, the State charged Allen with Class D felony theft.[1] The trial court conducted a jury trial on July 12, 2012, after which the jury found Allen guilty as charged. The trial court entered a judgment of conviction and sentenced Allen on August 29, 2012, to eighteen months incarceration with credit for time served. This appeal follows.

## DISCUSSION AND DECISION

Allen contends that the evidence is insufficient to sustain his Class D felony theft conviction. In challenging the sufficiency of the evidence to sustain his theft conviction, Allen argues that the State failed to meet its burden of disproving his mistake of fact defense. Allen argues that the jury should have been required to believe his testimony over that of

---

[1] Ind. Code § 35-43-2-2(a) (2011).

Morris and Officer Hines because where, as here, there is conflicting evidence that could support two different interpretations, one of which is innocence, the jury is required to adopt the interpretation consistent with innocence. However, contrary to Allen's claim, it is well-settled that in a criminal proceeding, "'[t]he jury is free to believe whomever they wish.'" *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996) (quoting *Michael v. State*, 449 N.E.2d 1094, 1096 (Ind. 1983)); *see also Kocher v. State*, 439 N.E.2d 1344, 1345 (Ind. 1982) (providing that when the evidence is in conflict, the jury is free to believe whomever they wish); *Hammond v. State*, 594 N.E.2d 509, 515 (Ind. Ct. App. 1992) (providing that the trial court was not obligated to believe Hammond's testimony), *trans. denied*.

Pursuant to Indiana Code section 35-41-3-7, a mistake of fact defense "is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." *Saunders v. State*, 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006), *trans. denied*; *see also Nolan v. State*, 863 N.E.2d 398, 404 (Ind. Ct. App. 2007), *trans. denied*.

> [W]e have held that, "[i]n order for mistake of fact to be a valid defense, three elements must be satisfied: (1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact; and (3) the mistake must negate the culpability required to commit the crime." *Giles v. State*, 699 N.E.2d 294, 300 (Ind. Ct. App. 1998) (citing *Potter v. State*, 684 N.E.2d 1127, 1135 (Ind. 1997)). Regarding the first element, our supreme court has stated that "[h]onesty is a subjective test dealing with what appellant actually believed. Reasonableness is an objective test inquiring what a reasonable man situated in similar circumstances would do. To require the giving of appellant's instruction, we must find some evidence of both." *Davis v. State*, 265 Ind. 476, 355 N.E.2d 836, 839 (1976).

*Nolan*, 863 N.E.2d at 404.

4

When the State has made a prima facie case of guilt, the burden is on the defendant to establish an evidentiary predicate of his mistaken belief of fact, which is such that it could create a reasonable doubt in the fact-finder's mind that the defendant had acted with the requisite mental state. *Hoskins v. State*, 563 N.E.2d 571, 575 (Ind. 1990). The State retains the ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent, which would in turn entail proof that there was no reasonably held mistaken belief of fact. *Id.* at 575-76. In other words, the State retains the ultimate burden of disproving the defense beyond a reasonable doubt. *Ringham v. State*, 768 N.E.2d 893, 898 (Ind. 2002), *reh'g denied*; *Nordstrom v. State*, 627 N.E.2d 1380, 1383 (Ind. Ct. App. 1994), *trans. denied*. The State may meet its burden by directly rebutting evidence, by affirmatively showing that the defendant made no such mistake, or by simply relying upon evidence from its case-in-chief. *Bergmann v. State*, 486 N.E.2d 653, 660 (Ind. Ct. App. 1985).

*Saunders*, 848 N.E.2d at 1121.

Whether Allen sufficiently raised a mistake of fact defense is a question for the trier of fact. *Id.* On appeal, we review the issue by the same standard applied when the sufficiency of the evidence to sustain a conviction is challenged. *Id.*

That is, we do not reweigh the evidence or judge the credibility of witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* We will uphold the conviction if there is substantial evidence of probative value to support it. *Id.*

*Id.*

In the instant matter, the State charged Allen with Class D felony theft. In order to convict Allen of this charge, the State was required to prove beyond a reasonable doubt that Allen "knowingly or intentionally exert[ed] control over [the] property of another person, with [the] intent to deprive the other person of any part of its value or use." Ind. Code § 35-

5

43-4-2. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "[T]he requisite intent may be presumed from the voluntary commission of the act." *Mishler v. State*, 660 N.E.2d 343, 348 (Ind. Ct. App. 1996).

On appeal, Allen does not challenge the jury's determination that he took the items in question from Morris's property. Allen merely claims that the evidence at trial was insufficient to sustain his conviction because he presented evidence that negated the required mental state. Allen testified at trial that on the afternoon of January 20, 2012, he and Young were "walking through the alley, going to look for some scrap, you know, try to make an honest day hustle." Tr. p. 138. Allen testified that he and Young "ran up on that scrap" which he claimed was "on the side of the alley" so they went to the scrap yard, "got a buggy[,]" came back, and "loaded the stuff up." Tr. p. 139. Allen further testified that he thought "[s]omebody just throwed [the scrap] away." Tr. p. 140. Allen stated that he thought anything laying in the alley was free and stated that he didn't think he was stealing. Allen reiterated that he was "just trying to go outside and make an honest day's hustle." Tr. p. 142.

Allen argues that his testimony proves that he did not knowingly or intentionally exert control over the property of Morris with the intent to deprive Morris of the use or value of the property. As such, he claims that because of his mistake of fact, *i.e.*, that the property was "throwed" away or abandoned, he could not be found to have the requisite mental state.

6

Upon review, however, we conclude that the evidence in the State's case-in-chief disproved Allen's mistake of fact defense beyond a reasonable doubt.

In particular, Morris, the owner of the warehouse from which the items were taken, testified that he was driving by his warehouse during the afternoon hours of January 20, 2012, when he saw "two gentlemen with a grocery cart loading scrap out of the north end of [his] building." Tr. p. 89. Morris watched then men load "[s]crap metal and an orange top electrical disconnect switch" in the cart. Tr. pp. 89-90. Morris noticed that the men were pushing the grocery cart full of scrap in the direction of a nearby scrap yard. The men were soon thereafter approached by Officer Hines at the scrap yard where they were trying to sell the items taken from Morris's warehouse.

Morris went with Officer Hines to the back of his building where he had first seen the men loading the scrap metal into the grocery cart. Morris and Officer Hines followed footprints in the snow which went from the direction of the scrap yard up to and inside Morris's warehouse. Morris noticed that that the door to the warehouse, which had been locked with a pad lock, had been pried open. Morris waited for police to arrive before entering the warehouse and testified that he entered the warehouse for the first time that day when he entered with Officer Hines. Once inside the warehouse, Morris and Officer Hines saw snowy footprints, and Morris noticed that steel siding and an electrical control box were missing. Morris subsequently identified the items in the grocery cart as items that belonged to him and had come from inside his warehouse. At trial, Morris testified that he "absolutely" did not leave scrap outside of the warehouse, and that he did not know Allen or

7

Young or give either of them permission to take the items. Tr. p. 98.

In addition, Officer Hines testified that he intercepted Allen and Young on the scales at the scrap yard with a grocery cart containing corrugated metal siding and an electrical box. As Officer Hines subsequently returned to Morris's warehouse, he saw "four wheel tracks from presumably a grocery cart" and "several sets of tracks" in the snow that were coming from Morris's warehouse. Tr. p. 120. Officer Hines testified that when he and Morris entered the warehouse, he saw snowy footprints inside Morris's building that matched those that left the property with the grocery cart. Also, another officer who responded to Morris's call, Officer Ronald Glon, testified that the footprints and shopping cart tracks that he saw, which were coming from the direction of Morris's warehouse in the direction of the scrap yard, appeared to be fresh.

Again, it is the prerogative of the fact-finder to weigh the evidence and to determine who is telling the truth. *Saunders*, 848 N.E.2d at 1121-22 (citing *Bergmann*, 486 N.E.2d at 660). As such, the jury was not required to believe Allen's testimony that he found the items in question outside the building or that he believed the items had been thrown away or abandoned. The testimony of Morris and Officers Hines and Glon is sufficient to disprove Allen's mistake of fact defense. Allen's claim to the contrary amounts to nothing more than an invitation for this court to reweigh the evidence and reassess witness credibility, which we will not do. *See id.* at 1121. We therefore affirm Allen's theft conviction.

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.

8