## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2016, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth A. Johnson
Marion County Public Defender
Indianapolis, Indiana

Hilary B. Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Deputy Attorney General

Katherine M. Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Johnson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 8, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1511-CR-2001 <br><br> Appeal from the Marion Superior Court. <br> The Honorable Sheila A. Carlisle, Judge. <br> Cause No. 49G03-1504-F1-012180 |

**Garrard, Judge**

[1] Following a jury trial, John Johnson was found guilty of attempted murder as a Level 1 felony. Finding that no error occurred below, we affirm.

[2] The facts most favorable to the verdict are as follows. After midnight, on April 4, 2015, Latwron Stephens went to a bar in downtown Indianapolis to celebrate

his birthday. He was accompanied by his girlfriend, his brother, his uncle, and a friend. Johnson and his girlfriend also were at the bar. Approximately ten or fifteen minutes after Latwron and his group arrived, Johnson walked past the group and gave the men in the group "dirty looks." Tr. p. 195. Approximately ten minutes later, Johnson returned and he and Latwron confronted each other. Latwron's brother was standing beside him at the time. Latwron asked Johnson, "What's your problem?" *Id.* at 197. Johnson replied, "You don't want none of this, little homie." *Id.* Johnson then brandished a gun and shot Latwron several times. As Latwron turned and attempted to run away, Johnson shot Latwron several more times. Latwron, who was shot a total of nine times, fell to the floor. Witnesses testified that Latwron did not have a weapon in his possession. Johnson then left the bar. Latwron survived his wounds and was able to identify Johnson from a photo array as the shooter.

[3] Three days after the shooting incident, Johnson and his girlfriend voluntarily appeared at the Indianapolis Metropolitan Police Department (IMPD) headquarters. Both provided taped statements regarding the incident.[1] Johnson was arrested and eventually charged with attempted murder as a Level 1 felony.[2]

---

[1] The taped statements were not introduced as exhibits during Johnson's trial and are not included in the record on appeal.

[2] Ind. Code § 35-42-1-1(1) (2014) (Murder), Ind. Code § 35-41-5-1 (2014) (Attempt).

Johnson's defense at trial was that he was acting in self-defense. At trial, Johnson tendered pattern jury instructions on self-defense and the mistake of fact defense. The trial court refused to instruct the jury on the mistake of fact defense. Following the jury trial, Johnson was found guilty as charged.

Johnson now appeals arguing the prosecutor committed misconduct in the form of a *Doyle* violation, and the trial court erroneously refused Johnson's tendered instruction on the mistake of fact defense.

## 1.

Although not specifically framed as such, Johnson's first claim, as set forth in his Appellant's brief, is that the prosecutor violated the rule set out in *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). In *Doyle*, the United States Supreme Court held that using a defendant's post-arrest, post-*Miranda* silence to impeach an exculpatory story told for the first time at trial, violates the defendant's rights under the Due Process Clause of the Fourteenth Amendment. *Id*. at 618-619, 96 S. Ct. at 2245, 49 L. Ed. 2d at 98. "The key to *Doyle* is that it protects the defendant from being found guilty simply on the basis of a legitimate choice to remain silent." *Trice v. State*, 766 N.E.2d 1180, 1183-84 (Ind. 2002).

"Where a defendant asserts a *Doyle* violation, he 'ordinarily bears the burden of showing that *Miranda* warnings were given prior to the post-arrest silence used by the state for impeachment purposes.'" *Lainhart v. State*, 916 N.E.2d 924, 936 (Ind. Ct. App. 2009) (quoting 3 Wayne R. LaFave, Criminal Procedure § 9.6(a)

n.47 (3d ed. 2007)). To determine whether a *Doyle* violation denied a defendant a fair trial, we must examine five factors: (1) the use to which the prosecution puts the post-*Miranda* silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial court judge of an opportunity to grant a motion for mistrial or to give curative instructions. *Barton v. State*, 936 N.E.2d 842, 852-53 (Ind. Ct. App. 2010), *trans. denied*.

[8] During Johnson's jury trial, IMPD Officer Timothy Fogarty testified for the State. On cross-examination, Johnson's counsel asked the officer certain questions regarding Johnson's taped statement to the police. The following took place:

> [Defense Counsel:] And Mr. Johnson spoke with you, *but he exercised his right not to speak about the case without an attorney; is that right*?
>
> [Officer Fogarty:] Yes, sir.
>
> [Defense Counsel:] But you did ask him if he could tell you where the weapon was?
>
> [Officer Fogarty:] That question was asked.
>
> [Defense Counsel:] *And without asking for an attorney*, he told you where you could find the weapon?
>
> [Officer Fogarty:] Yes, sir.

Tr. pp. 413-14 (emphasis added). On re-direct examination, the prosecutor asked the following questions of Officer Fogarty:

[Prosecutor:] . . . And when he did talk to you, did he ever say anything about seeing another gun there?

[Officer Fogarty:] No, sir.

[Prosecutor:] Or being concerned about a gun there?

[Officer Fogarty:] No, sir.

[Prosecutor:] Even mention another gun?

Tr. pp. 425-26. Defense counsel objected on grounds that Johnson "[had] exercised his right not to speak to counsel. He cannot be punished or made to look bad because he exercised his constitutional right, which is what [the prosecutor] is attempting to do at this point." Tr. p. 426. After discussion between the trial court, defense counsel, and the prosecutor, the prosecutor decided not to pursue the line of questioning. The trial court did not rule on defense counsel's objection.

[9] On appeal, Johnson claims the prosecutor's line of questioning amounted to a *Doyle* violation.[3] The State, however, argues no *Doyle* violation occurred because Johnson failed to present evidence regarding when he was *Mirandized*. In his reply brief, Johnson appears to agree with the State's argument and concede this fact, stating "[t]he State is correct that Johnson's argument does not actually fall under *Doyle* . . . because [Officer] Fogarty did not testify that

---

[3] Johnson frames this issue in part as a violation of his Fifth Amendment privilege against self-incrimination. However, a *Doyle* violation is a violation of the Fourteenth Amendment's Due Process Clause prohibition against fundamental unfairness. *See Sobolewski v. State*, 889 N.E.2d 849, 856 (Ind. Ct. App. 2008), *trans. denied*.

Johnson had been *Mirandized* prior to asserting his right to terminate the interview." Appellant's Reply Br. p. 5. Although Johnson failed to present evidence as to when he was *Mirandized*, we will presume, based upon Officer Fogarty's testimony at trial, that Johnson was *Mirandized* at some point. Nevertheless, without evidence indicating when Johnson was *Mirandized*, we cannot find that a *Doyle* violation occurred. We, therefore, find no error.

## 2.

[10] Johnson next claims the trial court erred when it refused his tendered pattern jury instruction on the mistake of fact defense. When reviewing the refusal of a tendered instruction, we must determine whether the instruction correctly states the law, whether the evidence supports giving the instruction, and whether the substance of the instruction is covered by the other instructions given. *Miller v. Ryan*, 706 N.E.2d 244, 248 (Ind. Ct. App. 1999), *trans. denied*. It is error to refuse an instruction if there is evidence in the record to support the theory set forth in the instruction; however, the trial court has considerable discretion in determining which issues have been raised by the trial evidence and in determining the form in which instructions will be given. *Id.*

[11] Indiana Code section 35-41-3-7 (1977) governs the mistake of fact defense and provides: "It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." "'[I]n order for mistake of fact to be a valid defense, three elements must be satisfied: (1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact;

and (3) the mistake must negate the culpability required to commit the crime.'" *Nolan v. State*, 863 N.E.2d 398, 404 (Ind. Ct. App. 2007) (quoting *Giles v. State*, 699 N.E.2d 294, 300 (Ind. Ct. App. 1998)), *trans. denied*. In reviewing whether the evidence was such as to require a mistake of fact instruction, we consider whether the evidence relevant to that defense could, if believed by the jury, have created a reasonable doubt in the jury's mind that the accused acted with the requisite mental state. *See Stoner v. State*, 442 N.E.2d 983, 985 (Ind. 1982).

[12]   The information here charged that Johnson

> . . . did attempt to commit the crime of Murder, which is to intentionally kill another human being, namely: [Latwron] Stephens, by engaging in conduct, that is: shooting a deadly weapon, that is: a handgun, at and against the person of [Latwron] Stephens with the specific intent to kill [Latwron] Stephens, which conduct constituted a substantial step toward the commission of said crime of Murder . . . .

Appellant's App. p. 27. Johnson tendered the following pattern jury instruction on the mistake of fact defense:

> It is an issue whether the Defendant mistakenly committed the acts charged.
>
> It is a defense that the Defendant was reasonably mistaken about a matter of fact if the mistake prevented the Defendant from:
>
> [Intentionally/Knowingly/Recklessly] committing the acts charged
>
> (Or)
>
> [Committing the acts charged with specific intent to (specify specific intention for crime)].

> The State has the burden of proving beyond a reasonable doubt that the Defendant was not reasonably mistaken.

*Id*. at 100. The instruction was refused by the trial court.

[13] In support of his argument that the trial court erred in refusing the mistake of fact instruction, Johnson cites *Hoskins v. State*, 563 N.E.2d 571 (Ind. 1990), and attempts to distinguish his case from *Hoskins*. In *Hoskins*, the defendant, who was charged with attempted murder, challenged the trial court's refusal of his instruction on mistake of fact. Hoskins argued on appeal that the acts of the three victims gave him the mistaken belief that one of the victims had a gun and that he was in more danger than he actually was. Our Supreme Court found that the evidence did not support a mistake of fact defense but only served as evidence to support self-defense. *Id*. at 576.

[14] Hoskins' charging information contained a "knowing" mens rea, and not the mens rea of specific intent to kill.[4] Johnson points out that unlike Hoskins' charging information, his charging information included the proper mens rea. Thus, according to Johnson,

> [a] mistaken belief that one (1) of the two (2) persons standing less than two (2) feet in front of him [(that is, Latwron's brother)] was pulling out a gun to follow through on [Latwron's verbal

---

[4] In 1991, our Supreme Court reaffirmed that attempted murder instructions must include the required mens rea of specific intent to kill. *See Spradlin v. State,* 569 N.E.2d 948, 950 (Ind. 1991) (holding that to convict a defendant of attempted murder, the defendant must have intended to kill the victim at the time the defendant took a substantial step toward committing murder).

threat that he was going] to kill [Johnson] very likely would have created doubt in the [jurors'] minds that Johnson specifically intended to kill [Latwron] when he fired at him. . . . [E]rroneously thinking that his life was in, or about to be in, danger, he was entitled to fire first and ask questions later.

Appellant's Br. p. 18.

[15] Johnson does not argue on appeal that, had the facts been as he believed them to be, his act of shooting Latwron would not have been criminal. *See Payne v. State*, 854 N.E.2d 7, 20 (Ind. Ct. App. 2006) ("[T]he mistake of fact defense is available where the defendant, acting under a reasonable and honest mistake concerning a fact or facts commits an act which, if the facts were as the defendant believed them to be, would not be criminal."). Instead, Johnson's argument is that he may have intentionally engaged in the prohibited conduct because he mistakenly believed he was acting in self-defense. The differing mens reas do not convince us that Johnson's case is different from that of Hoskins. We find that, like Hoskins, the evidence Johnson offered to support his mistake of fact defense was actually evidence that supported his claim of self-defense. *See Hoskins*, 563 N.E.2d at 576 ("Rather, the evidence offered by appellant in support of his mistake of fact theory was actually evidence of justification supporting the predicate to his claim of self-defense.") Because the evidence in this case does not support the giving of a mistake of fact defense instruction, the trial court did not err in refusing Johnson's tendered instruction.

[16] Affirmed.

Baker, J., and Najam, J., concur.