# FOR PUBLICATION



**FILED**
Jul 16 2013, 7:04 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY J. BURNS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM CHAVERS,                )
                                )
   Appellant-Defendant,         )
                                )
      vs.                      )       No. 49A04-1211-CR-580
                                )
STATE OF INDIANA,               )
                                )
   Appellee-Plaintiff.          )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Crawford, Judge
Cause No. 49G21-1209-CM-65656

**July 16, 2013**

**OPINION –FOR PUBLICATION**

**MATHIAS, Judge**

William Chavers ("Chavers") appeals his conviction for Class A misdemeanor invasion of privacy in Marion Superior Court. Chavers argues that the State's evidence was insufficient to support his conviction because there was a mistake of fact as to the existence of the no contact order.

We affirm.

**Facts and Procedural History**

On July 16, 2012, Amber Cushenberry ("Cushenberry") sought and received a civil protection order against Chavers from Marion Superior Court 21 ("Court 21"). The order was set to expire on September 10, 2012. On September 10, 2012, Court 21 held a hearing to determine whether the protective order would be renewed. Cushenberry did not appear at the renewal hearing. Court 21 dismissed the protective order due to her failure to appear, and Chavers, who was in custody and present at the hearing, was made aware of the order's dismissal.

Five days later, on September 17, 2012, Chavers entered a guilty plea for Class D felony criminal confinement in Marion Superior Court 16 ("Court 16"). Cushenberry was identified as the victim of this crime. Chavers was sentenced to 365 days, with 106 days executed and 259 days suspended to probation. As a condition of probation, Court 16 entered a no contact order protecting Cushenberry and two others, with instructions that the order could be vacated at the victims' request.

On or about September 18 or 19, 2012, Cushenberry went to Court 21 and asked that the protective order be removed. Cushenberry was given paperwork indicating that the civil protective order had been dismissed at the September 10 hearing. Cushenberry

2

did not go to Court 16 to request that the no contact order issued as a condition of Chavers's probation be vacated.

A day or so later, on September 20, 2012, Chavers met with Andrew Kerr ("Kerr"), a probation officer, and was oriented as to the terms of his probation. Kerr reminded Chavers of all the conditions of his probation, including the no contact order from Court 16.

Later that same day, on September 20, Chavers had contact and conversations with Cushenberry, who indicated to Chavers that she had the dismissal paper and that Chavers could come to her home. Chavers was still on GPS monitoring, and the no contact order issued by Court 16 was still in effect when he went to Cushenberry's home that evening.

At or around 10:30 p.m. on September 20, Indianapolis Metropolitan Police Officer Tiffany Wren was called to Cushenberry's residence to check on the welfare of Cushenberry, pursuant to the Court 16 no contact order, because a GPS signal indicated that Chavers was at the home. Although Cushenberry was not immediately cooperative with police when asked where Chavers was, she did allow the officers into the home, and the officers proceeded to look for Chavers. After announcing their presence loudly and asking Chavers to come out with no success, they eventually located Chavers in the back room of the home, seated in a chair. Despite his initial lack of cooperation, Chavers complied with police questioning regarding the Court 16 no contact order. Chavers indicated to the officers that he and Cushenberry had paperwork to confirm the dismissal of the order. Cushenberry then produced the dismissal paperwork that she had obtained

from Court 21 regarding the civil protection order that had expired on September 10, 2012.

Upon seeing the dismissal papers, Officer Wren believed that the order for which she had been called to the residence might no longer be in effect. Thus, she contacted her control officer to determine whether the Court 16 order was still valid. The control officer informed her that it was. Officer Wren also attempted to contact the number listed on Court 21's dismissal paper, to no avail. Officer Wren then arrested Chavers for invasion of privacy.

On September 26, 2012, Chavers was charged by Information with Class A misdemeanor invasion of privacy for being found in Cushenberry's home in violation of Court 16's no contact order. On October 24, 2012, Chavers was convicted of the offense at the conclusion of a bench trial. Immediately following the trial court's judgment, a sentencing hearing was conducted. The trial court sentenced Chavers to 365 days, 183 days suspended to probation, 182 days to be served in home detention, with credit for two days of confinement served prior to sentencing. Chavers now appeals.

**Discussion and Decision**

In reviewing a trial court's judgment for sufficiency of the evidence, this Court will affirm the decision of the trial court if the probative evidence and reasonable inferences drawn therefrom could allow a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). On appeal, we do not reweigh the evidence or judge the credibility of the witnesses. Fields v. State, 679 N.E.2d 898, 900 (Ind. 1997). We look only to evidence and

4

reasonable inferences supporting the judgment to determine whether the trier of fact could reasonably reach the conclusion. Id. If there is substantial evidence of probative value supporting a conviction, this Court will not set the judgment aside. Id.

Indiana Code section 35-46-1-15.1 codifies the offense of invasion of privacy. As elements of the offense, the State must show that a defendant knowingly or intentionally violated some form of protective order. In this case, Chavers was convicted of knowingly or intentionally violating a no contact order issued as a condition of release and a no contact order as a condition of probation.

Chavers argues, as he did at trial, that his violation of the Court 16 no contact order was a mistake of fact, negating his culpability under the offense. Mistake of fact is codified as a defense to the charge of invasion of privacy at Indiana Code section 35-41-3-7, which states in relevant part, "It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." When the State has made a *prima facie* case of guilt, the burden is on the defendant to establish an evidentiary predicate of his mistaken belief of fact. Saunders v. State, 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006) (citing Hoskins v. State, 563 N.E.2d 571, 575 (Ind. 1990)). Upon invoking mistake of fact as a defense, the burden shifts to the defendant to satisfy three elements: "(1) that the mistake be honest and reasonable; (2) that the mistake be about a matter of fact; and (3) that the mistake negate the culpability required to commit the crime." Potter v. State, 684 N.E.2d 1127, 1135 (Ind. 1997) (citing Smith v. State, 477 N.E.2d 857, 863 (Ind. 1985)).

5

The State, however, retains the ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent, which would in turn entail proof that there was no reasonably held mistaken belief of fact. Saunders, 848 N.E.2d at 1121 (citing Hoskins, 563 N.E.2d at 575-76). "In other words, the State retains the ultimate burden of disproving the defense beyond a reasonable doubt." Id. (citing Ringham v. State, 768 N.E.2d 893, 898 (Ind. 2002)). The State may meet its burden by directly rebutting evidence, by affirmatively showing that the defendant made no such mistake, or by simply relying upon evidence from its case-in-chief. Id. (citing Bergmann v. State, 486 N.E.2d 653, 660 (Ind. Ct. App. 1985)).

Chavers's primary contention lies in his professed confusion regarding the validity of the protective orders filed against him. He was present for the dismissal of the Court 21 order, and was thus made aware that it was no longer in effect. Chavers states that he relied, in a manner he believed to be reasonable, on Cushenberry's statement that she had gone to court and that the order had been vacated at her request. He argues that he could and did reasonably believe that the Court 16 order was vacated, and that his presence at Cushenberry's home was not a knowing violation of the no contact order, but rather a mistaken belief that the order was no longer in effect. He argues that this belief constitutes a mistake of fact that negates the element of knowledge requisite for commission of the offense of invasion of privacy.

Officer Wren testified that she believed that Cushenberry and Chavers both believed that the order had been lifted when she arrived at the home. However, she also stated that their behavior in failing to initially cooperate with the officers was suspicious.

6

While she was inclined to believe that Chavers might have been honest in his professed mistaken belief, she found it odd that someone who believed they were engaged in innocent conduct would attempt to hide from police. There may be some evidence to support Chavers's assertion that his mistake was honest, but there is also evidence to support that it was not. On appeal, we look only to the evidence and the reasonable inferences supporting the judgment. McHenry, 820 N.E.2d at 126. Any conflict in the evidence was for the trier of fact, the trial judge in this case, to resolve, and we will not disturb the trial court's credibility determinations on appeal. See id.

Further, even if the mistake was honest, it is not clear that Chavers's mistake was reasonable. Cushenberry did not have paperwork or records to indicate that she had asked Court 16 to vacate its no contact order. Rather, Cushenberry was only able to produce the dismissal information regarding the Court 21 order when police arrived to arrest Chavers. There was no evidence to suggest that Chavers had asked to see the documentation that Cushenberry had obtained. And had he done so, he could have easily noticed the difference in the dismissed civil case caption and active criminal case caption. Instead, he relied only on Cushenberry's assertion that the order had been vacated. However, Chavers had been informed by Kerr at his probation appointment earlier on the day of his arrest that the no contact order was still in effect, and Kerr believed there was no confusion about the order when they met. Therefore, Chavers had received conflicting information regarding the validity of the no contact order. In the face of such conflicting information, a reasonable person would attempt to verify the validity of the order, by looking at the dismissal papers personally, or by contacting the clerk of the

7

issuing court. This is especially true of a man who had just been convicted and sentenced for D felony criminal confinement. Chavers failed to take any such action.

While Chavers's reliance might have been reasonable absent other information, we believe that a reasonable person would have been alerted to the likely continued validity of the Court 16 no contact order after the probation appointment with Kerr. Further, even if Chavers's reliance was reasonable when he arrived at Cushenberry's home, he had already been in contact with Cushenberry before she indicated to him that the order was vacated, in violation of the order. As a matter of law, the order was between Chavers and the State, not between Chavers and Cushenberry. Until the order was formally vacated by Court 16, no statement or assertion by Cushenberry could have been effective to render the order invalid.

It is important to remember that cases involving protective orders do not occur in a vacuum. In many, if not most, cases, the parties have a substantial history with law enforcement and have been in and out of court because they cannot get along in any meaningful fashion for any appreciable amount of time. Here, for example, the trial court could rightfully recall Chavers's civil and criminal history with regard to the victim as it made its determination as to his credibility. Specifically, it was for the court to determine whether Chavers relied at all or rather, saw an opportunity to try and skirt the law; or, if he did rely, whether his reliance was reasonable. In these cases, it is even more important than usual to remember that on appeal, we do not reweigh the evidence, assess the credibility of witnesses, or substitute our judgment for that of the trial court.

For all these reasons, the trial court had sufficient evidence to convict Chavers. Chavers failed to show that he made an honest and reasonable mistake of fact that would have negated his culpability for this offense.

Affirmed.

MAY, J., concur.

BAKER, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM CHAVERS,          )
                                 )

    Appellant-Defendant,     )
                                 )

         vs.                )     No.  49A04-1211-CR-580
                                 )

STATE OF INDIANA,        )
                                 )

    Appellee-Plaintiff.      )

**BAKER, Judge, dissenting.**

Because I do not believe that Chavers possessed the requisite intent to support his conviction for invasion of privacy, I am compelled to part ways with the majority. More particularly, I cannot agree that the evidence shows that Chavers knowingly violated an order of protection.

Chavers was present at the September 10, 2010 hearing that resulted in the dismissal of the civil protection order because Cushenberry failed to appear. Then, less than one week later, Chavers appeared in a different superior court, Court 16, where as a condition of his probation, he was to abide by a no contact order protecting Cushenberry unless she vacated it. Cushenberry attempted to do so, but she went to the wrong court – Court 21 – where she had obtained the first protection order. Cushenberry was given

paperwork indicating that the protective order had been dismissed at the September 10 hearing. However, she did not go to Court 16 to request that the no contact order that had been imposed as a condition of Chavers's probation be vacated.

A day or so passed before the two of them finally decided to meet after Cushenberry explained that she had dismissal papers. Indeed, even Officer Wren believed that the protective order for which she had been called to investigate might no longer be in effect.

Under these circumstances, I cannot conclude that there was sufficient evidence to convict Chavers. He was not with Cushenberry when she tried to get the no contact order vacated, and an average person could be easily mistaken regarding the exact superior court number where he or she needed to go to get a no contact vacated, especially in a county as large as Marion. As for Chavers's unwillingness to cooperate with police, it is apparent he is not exactly a law-abiding citizen. Nevertheless, I do not believe the evidence was sufficient in this case. Accordingly, I dissent.