## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 04 2015, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Barbara J. Simmons | Gregory F. Zoeller |
| Oldenburg, Indiana | Attorney General of Indiana |
| | |
| | Kenneth Biggins |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodrick Hughes, | March 4, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1408-CR-562 |
| v. | Appeal from the Marion County Superior Court |
| State of Indiana, | The Honorable Tiffany Vivo, Commissioner |
| *Appellee-Plaintiff* | Cause No. 49G21-1405-CM-023264 |

**Bailey, Judge.**

# Case Summary

[1] Rodrick Hughes ("Hughes") appeals his conviction for Invasion of Privacy, as a Class A misdemeanor.[1] He challenges his conviction based on the sufficiency of the evidence. We affirm.

# Facts and Procedural History

[2] On October 9, 2013, Marion Superior Court 5 Civil Division issued an *ex parte* order of protection under Indiana Code section 34-26-5-9(b), which, *inter alia*, ordered Hughes "to stay away from the residence" of R.G. (State's Exhibit 1 at 3.) On October 22, 2013, Indianapolis Metropolitan Police Department ("IMPD") Officer David Labanauskas ("Officer Labanauskas") served Hughes with the protective order, and Hughes testified that he was aware of it. The order was set to expire on October 9, 2014.

[3] In the early morning of May 4, 2014, IMPD Officer Joshua Kemmerling ("Officer Kemmerling") was dispatched to R.G.'s residence in response to a report of a "suspicious person" or "trouble with a person." (Tr. 7.) R.G.'s residence was located in a residential neighborhood in southeast Marion County. Upon arrival at R.G.'s address, Officer Kemmerling located Hughes walking around the north side of R.G.'s residence. The officer testified that Hughes's behavior was "suspicious" (Tr. 8) because Hughes was walking

---

[1] Ind. Code § 35-46-1-15.1(1). We refer to the version of the statute in effect at the time of Hughes's offense.

"between the houses in the dark in an area that no pedestrian or person other than a resident would be walking[.]" (Tr. 9.)

[4] Hughes identified himself to Officer Kemmerling, who searched a computer database and discovered there was a protective order in place directing Hughes to stay away from R.G.'s residence. IMPD Officer Terrance Cress arrived on the scene and interviewed R.G., who was at home. Based on the officers' investigation, Hughes was placed under arrest for invasion of privacy.

[5] On July 21, 2014, a bench trial was held, at the conclusion of which Hughes was found guilty. He now appeals.

## Discussion and Decision

[6] Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* at 147 (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

[7] Under Indiana Code section 35-46-1-15.1(1), a person who knowingly or intentionally violates a protective order to prevent domestic or family violence

issued under Indiana Code chapter 34-26-5 commits invasion of privacy.  On October 9, 2013, Marion Superior Court 5 Civil Division issued an *ex parte* order of protection under Indiana Code section 34-26-5-9(b) ordering Hughes "to stay away from the residence" of R.G.  (State's Exhibit 1 at 3.)

[8] The State charged that on or about May 4, 2014, Hughes "did knowingly violate an order of protection, that is: A protective order issued to prevent domestic or family violence issued under IC 4-26-5 . . . which was issued to protect [R.G.], and furthermore, did so by engaging in the following conduct[:] being at the residence and/or property of [R.G.]."  (App. 14.)

[9] Hughes argues that the evidence is insufficient to support his conviction because "[w]hile he may have been near [R.G.'s] home on [May 4, 2014], he was not at her property."  (Appellant's Br. 7.)  The evidence shows that a protective order was in effect on May 4, 2014, when police were called to R.G.'s address.   After arriving at that address, Officer Kemmerling testified that he saw Hughes "walking around the north side of the home adjacent to the residence - - the address that we were sent to."  (Tr. 8.)  Officer Kemmerling's testimony that Hughes was walking along the outside of R.G.'s home is sufficient to establish that Hughes failed "to stay away from" R.G.'s residence in violation of the protective order (State's Exhibit 1 at 3) and that Hughes was "at the residence and/or property of [R.G.]" as charged.  (App. 14.)  The evidence was thus sufficient to support Hughes's conviction for invasion of privacy.

[10] Hughes also argues that the State did not present sufficient evidence that he "knowingly" committed invasion of privacy because Hughes "believed the protective order had been dismissed." (Appellant's Br. 6.) Hughes testified at trial that he thought the protective order was no longer in effect because a no-contact order issued by a different court in a separate case also involving R.G. had been dismissed.

[11] A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35-41-2-2(b). Here, Officer Labanauskas's testimony that he served Hughes with the protective order coupled with Hughes's acknowledgement of the order is sufficient to show Hughes knowingly violated the order. *See Dixon v. State*, 869 N.E.2d 516, 520 (Ind. Ct. App. 2007) (holding that there was sufficient evidence to affirm defendant's conviction for invasion of privacy for knowingly or intentionally violating a protective order after a police officer gave defendant oral notice of the order and defendant returned later that day). Although Hughes testified that he believed the order had been dismissed, in cases involving protective orders, "it is even more important than usual to remember that on appeal, we do not reweigh the evidence, assess the credibility of witnesses, or substitute our judgment for that of the trial court." *Chavers v. State*, 991 N.E.2d 148, 153 (Ind. Ct. App. 2013), *trans. denied*. Despite Hughes's self-serving testimony that he believed the protective order was dismissed, there was sufficient evidence to support Hughes's conviction for knowingly committing invasion of privacy. *See id.* (affirming defendant's conviction for knowingly committing invasion of

privacy where defendant mistakenly believed the no-contact order that formed the basis of the conviction was dismissed when, in fact, a separate protective order issued by a different court had been dismissed, the no-contact order was still valid, and the defendant's mistaken belief was not reasonable).

# Conclusion

There was sufficient evidence to convict Hughes of invasion of privacy.

Affirmed.

Robb, J., and Brown, J., concur.