## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 24 2015, 8:53 am
CLERK
of the supreme court,
court of appeals and
tax court

---

**ATTORNEY FOR APPELLANT**

Kurt A. Young
Nashville, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Eugene Hill,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 24, 2015

Court of Appeals Case No.
49A04-1502-CR-43

Appeal from the Marion County
Superior Court;
The Honorable Christina Klineman,
Judge;
49G17-1410-F6-48234

**May, Judge.**

Eugene Hill appeals the sufficiency of evidence supporting his conviction of Level 6 felony residential entry.[1] We affirm.

## Facts and Procedural History

In October 2014, Andrea Gilmore was living off and on in an apartment that had been leased by her father, who was no longer living in the apartment due to illness. Gilmore kept most of her clothing and some other possessions in the apartment, and she intended to take over her father's lease because he would not be returning.

At 8 a.m. on October 13, Gilmore returned to the apartment to change her clothes before going to work. When she unlocked the door and entered the residence, she immediately noticed a strong odor of urine. As she walked further into the apartment she noticed Hill sitting on the couch crying. Gilmore knew Hill, who had been at the apartment on other occasions, but he did not have a key to the apartment and she had not given him permission to enter on this date. Gilmore asked Hill what he was doing, why it smelled "like pee," (Tr. at 26), and "what the f*** is goin' [sic] on?" (*Id.*) When she noticed her clothing torn up in pieces on the floor and wet with urine, she asked why her clothes smelled like urine, and "that's when everything went crazy." (*Id.* at 27.) Hill "hopped up" off the couch, "knocked" her back, and "pounded on" her. (*Id.*) Hill punched Gilmore with his fists and kicked her as he accused her of

---

[1] Ind. Code § 35-43-2-1.5 (2014).

being "out havin' sex," (*id.* at 28), and he threatened to break her hands so she could no longer work as a hair dresser. Gilmore's uncle, who lived in an adjacent apartment, began pounding on her apartment door. When the pounding stopped, Hill fled.

[4] A few moments later, Gilmore's uncle returned with the police. They found a screen had been broken out of a window into Gilmore's apartment and the window had been raised. The screen was not normally on the ground where it was found. Gilmore's left eye was swollen shut and had scratches above it, and she had cracked ribs.

[5] The State charged Hill with level 6 felony intimidation,[2] level 6 felony residential entry, class A misdemeanor battery resulting in bodily injury,[3] and class B misdemeanor criminal mischief,[4] and it alleged Hill was an habitual offender.[5] Hill waived his right to a jury trial. After the State presented all of its evidence, the court granted Hill's motion to dismiss the intimidation charge. After Hill presented evidence, the court found Hill guilty of the remaining crimes and entered a conviction of level 6 felony residential entry. Hill agreed he was an habitual offender in exchange for the State's agreement he would receive a three-year sentence – one year for residential entry and two years for

---

[2] Ind. Code § 35-45-2-1(a)(2) (2014)

[3] Ind. Code § 35-42-2-1(b)(1).

[4] Ind. Code § 35-43-1-2(a).

[5] Ind. Code § 35-50-2-8.

being an habitual offender.  The court accepted that agreement and sentenced Hill accordingly.

## Discussion and Decision

[6] When an appellant challenges sufficiency of evidence supporting a conviction, we do not reweigh the evidence or assess the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015).  Rather, considering only the facts and inferences most favorable to the judgment, we affirm if "there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id*.

[7] Residential entry occurs when a person "knowingly or intentionally breaks and enters the dwelling of another person."  Ind. Code § 35-43-2-1.5.  Hill asserts he had consent to be in the apartment.  "Lack of consent is not an element of the offense [of residential entry that] the State is required to prove." *McKinney v. State*, 653 N.E.2d 115, 118 (Ind. Ct. App. 1995).  Rather, the defendant has the burden to raise the defense of consent. *Holman v. State*, 816 N.E.2d 78, 81 (Ind. Ct. App. 2004), *trans. denied*. *See also* Ind. Code § 35-41-3-7 ("It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.").  "Upon invoking mistake of fact as a defense, the burden shifts to the defendant to satisfy three elements: (1) that the mistake be honest and reasonable; (2) that the mistake be about a matter of fact; and (3)

that the mistake negate the culpability required to commit the crime." *Chavers v. State*, 991 N.E.2d 148, 151 (Ind. Ct. App. 2013) (internal citations and quotations omitted), *trans. denied*. Thus, to avail oneself of the defense of consent, a person's belief that he has permission to enter must be reasonable. *McKinney*, 653 N.E.2d at 118.

> The State, however, retains the ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent, which would in turn entail proof that there was no reasonably held mistaken belief of fact. In other words, the State retains the ultimate burden of disproving the defense beyond a reasonable doubt. The State may meet its burden by directly rebutting evidence, by affirmatively showing that the defendant made no such mistake, or by simply relying upon evidence from its case-in-chief.

*Chavers*, 991 N.E.2d at 151-52.

The trial court, in explaining why it found Hill guilty of residential entry, noted testimony Hill did not have a key to the property and evidence the window had been opened and the screen broken. It explicitly noted

> the Court did not believe Mr. Hill. Because a person who lives at a residence or dwelling would not—a reasonable person wouldn't urinate all over their apartment, nor the clothes of another person livin' [sic] in that apartment. Simply put, the Court had to weigh credibility of Mr. Hill . . . and the credibility of Ms. Gilmore, and the court did not believe Mr. Hill.

(Tr. at 60-61.)

[8] It is the trial court's prerogative to weigh the evidence and to determine credibility in reaching its judgment. *Transcon. Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277, 1284 (Ind. Ct. App. 1999). Gilmore, who resided in the

apartment, testified Hill had not been given permission to be there that day, nor, to her knowledge, had he been given a key.[6] When she saw Hill in the apartment, she immediately asked what he was doing and "what the f*** is goin' [sic] on?" (Tr. at 26.) Those questions suggest she had not consented to his presence in the apartment.

[9] Even if Hill believed he had consent to enter the apartment, such belief was not reasonable when he entered by breaking a screen and crawling through a window. *See Mitchell v. State*, 712 N.E.2d 1050, 1055 (Ind. Ct. App. 1999) (although Mitchell had lived in home for a time, he had been told to leave on two occasions, and although he claimed he entered with a key, police did not find the key where he claimed he placed it).

[10] The evidence is sufficient to demonstrate beyond a reasonable doubt that Hill committed residential entry and, accordingly, we affirm.

[11] Affirmed.

Crone, J., and Bradford, J., concur.

---

[6] Hill argues he cannot be convicted of residential entry into Gilmore's apartment because the apartment was leased by her father, not her. Regardless who leased the apartment, Gilmore testified her father was not returning to the apartment due to illness, she kept all of her clothing there, she sometimes slept there, and she intended to take over the lease. Under these facts, we hold no reversible error resulted from the State charging Hill with entry of Gilmore's residence, as Hill was not misled about the location of the crime alleged. *See, e.g., Harrison v. State*, 507 N.E.2d 565, 566 (Ind. 1987) (finding no reversible error in charge for burglarizing the New Mount Olive Baptist Church, where charge alleged building broken and entered was owned by Southern Baptist Mission Board, which held the mortgage, but evidence demonstrated ownership was in the New Mount Olive Baptist Church congregation itself, because defendant was not misled about the location of the burglary and could prepare a defense).