## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 29 2017, 11:07 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael Riley
Law Office of Michael Riley, P.C.
Rensselaer, Indiana

ATTORNEY FOR APPELLEE

Ned J. Tonner
Rensselaer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.S.,
*Appellant-Respondent,*

v.

L.K.,
*Appellee-Petitioner.*

September 29, 2017

Court of Appeals Case No.
37A03-1702-PO-359

Appeal from the Jasper Superior Court

The Honorable Thomas G. Fisher, Senior Judge

Trial Court Cause No.
37D01-1610-PO-814

**Barnes, Judge.**

## Case Summary

[1] D.S. appeals from the trial court's denial of his motion to correct error, which challenged the issuance of a protective order against him. We affirm.

## Issue

The sole issue before us is whether sufficient evidence supports the issuance of the underlying protective order such that the trial court acted properly in allowing it to become permanent and in denying D.S.'s motion to correct error.

## Facts

D.S. and L.K. dated from November 2015 until April 2016 at Saint Joseph's College in Renssalaer. D.S. ended their romantic relationship, but the parties maintained a sexual relationship until the end of the school year. The parties resumed their sexual relationship when school resumed in the Fall of 2016. In September of 2016, L.K. learned that D.S. had a new girlfriend and ended the arrangement. Occasionally, during the ensuing thirty-day period, D.S. asked L.K. to have sex with him, and L.K. refused.

On October 26, 2016, D.S. telephoned L.K. and said that he was coming to her dorm room for sex. L.K. again refused, but D.S. responded that he was "still coming over." Tr. p. 20. L.K. let him into her room, and the parties argued about their relationship status. At one point, L.K. told D.S., "[L]eave me alone or I'm going to get security." *Id.* at 21. D.S. "told [L.K.] to perform oral sex," and she responded, "what if I don't want to." *Id.* D.S. "grabbed the back of [her] neck and pushed [her] head down to his penis." *Id.* at 88. D.S. forced L.K. to perform oral sex. He then said "turn over . . . . [a]nd he proceeded to have sex with [her]." *Id.* Afterwards, D.S. "got up and put on his clothes and left." *Id.* at 23.

[5] After the incident, L.K. telephoned her mother and said, "I think I got raped." *Id.* at 24. L.K. or her mother reported the incident to her coach, campus security, and local police. The following day, L.K. petitioned for an ex parte protective order, which was granted. On October 25, 2016, the Jasper County Superior Court ordered D.S. to refrain from contacting, harassing, or threatening to commit or committing acts of domestic violence or sexual assault upon L.K. On October 31, 2016, D.S. filed a motion for a hearing on the ex parte order.

[6] Saint Joseph College crafted and implemented a meal schedule ("policy") to ensure that the parties did not interact in the campus cafeteria. D.S. was advised that violating the policy could result in his administrative dismissal.

[7] On November 30, 2016, L.K. filed a petition for contempt, alleging that D.S. violated the protective order on November 6, 7, 8, 10, 28, and 29 of 2016. The trial court conducted a combined hearing on L.K.'s contempt petition and D.S.'s request for a hearing on December 6, 2016.

[8] L.K. testified that D.S. forced her to have sex against her will. She also testified that D.S. had repeatedly violated the policy by being in the cafeteria at the same time as her, including an occasion when he sat nearby and stared at her, which she perceived as an effort to harass her. She testified further that her rape accusation was neither retaliatory nor motivated by jealousy and that she felt threatened and harassed, even after the trial court's issuance of the protective order.

[9] Investigator Pat Harper of the Jasper County Prosecuting Attorney's Office testified regarding interviewing L.K. after the incident. He testified that L.K. did not indicate that she was forced and described "nothing different" from the parties' typical dynamic. *Id.* at 63-64. He also testified that L.K. stated that she did not tell D.S. to stop and that "she just shut down." *Id.* at 66.

[10] Saint Joseph's Dean of Students, George Oripsko, testified that D.S. admitted to violating the policy. D.S., too, testified that he violated the policy. He maintained, however, that his violations stemmed from miscommunication between school officials and scheduling difficulties related to his athletic schedule. He testified further that, after the policy was revised to accommodate his schedule, he made no further contact with L.K. D.S. also maintained that the parties' sexual contact was wholly consensual.

[11] On December 14, 2016, the trial court declined to find D.S. in contempt but found sufficient evidence to warrant allowing the protective order to become permanent. On January 13, 2017, D.S. filed a motion to correct error, which was denied. *See* Tr. p. 100 ("I will say that this is a close case and I thought … long and hard about it. But the decision is what it is and I stand by it[.]"). D.S. now appeals.

## Analysis

[12] D.S. argues that the trial court erred in denying his motion to correct error and in allowing the protective order to become permanent. We generally review the denial of a motion to correct error for an abuse of discretion, which occurs

when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Kornelik v. Mirtal Steel USA, Inc.,* 952 N.E.2d 320, 324 (Ind. Ct. App. 2011), *trans. denied.*

[13] Indiana's Civil Protection Order Act ("CPOA") authorizes a person who is or has been a victim of domestic or family violence to file a petition for an order of protection. Ind. Code § 34-26-5-2. The respondent in such an action may be a person with whom the petitioner had been in a dating or sexual relationship. I.C. § 34-6-2-44.8(2), (3). To obtain a protective order, a petitioner alleging "domestic or family violence" must establish by a preponderance of the evidence that the respondent committed at least one of the following:

> (1) Attempt[ed] to cause, threatening to cause, or caus[ed] physical harm to another family or household member.
>
> (2) Plac[ed] a family or household member in fear of physical harm.
>
> (3) Caus[ed] a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress.

*A.S. v. T.H.,* 920 N.E.2d 803, 806 (Ind. Ct. App. 2010); I.C. § 34-6-2-34.5.

[14] D.S. argues that there was insufficient evidence to support the trial court's issuance of the protective order against him because "[L.K.] failed to put on evidence to demonstrate that she was in fact sexually assaulted or that [D.S.] had threatened her." Appellant's Br. p. 9.

[15] When considering the sufficiency of the evidence supporting a decision to issue or modify a protective order, we neither reweigh the evidence nor judge the credibility of witnesses. *See A.S.,* 920 N.E.2d at 806. We look only to the evidence of probative value and reasonable inferences supporting the trial court's judgment. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient. *Id.* To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it "most favorably to the trial court's ruling." *Id.*

[16] L.K. established by a preponderance of the evidence that D.S. "caus[ed]" her "to involuntarily engage in sexual activity by force, threat of force, or duress." *See* I.C. § 34-6-2-34.5(3). At the hearing for the protective order, she testified that before the incident, D.S. came to her dorm room against her wishes; asked her to perform oral sex; and when she responded, "What if I don't want to," forced her to perform oral sex, after which she submitted to vaginal intercourse against her will. Tr. p. 21.

[17] In considering D.S.'s motion to correct error, the trial court alluded to the matter as a "close case." *See* Tr. p. 100. In cases involving protective orders, "it is even more important than usual to remember that on appeal we do not reweigh the evidence, assess the credibility of witnesses, or substitute our judgment for that of the trial court." *Chavers v. State,* 991 N.E.2d 148, 153 (Ind. Ct. App. 2013). Where, as here, the parties' accounts conflict at virtually every turn, we cannot invade the province of the trial judge, who saw the witnesses,

observed their demeanor, scrutinized their testimony, weighed their credibility, and predicated its judgment on its observations. *See Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007) ("[T]he trier of fact is entitled to determine which version of the incident to credit.").

[18] There was sufficient evidence to support, by a preponderance of the evidence, the trial court's issuance of the protective order and its subsequent decision to allow the protective order to become permanent. This was a classic case of "he said, she said," and the trial court believed what she said. D.S.'s challenges to L.K.'s evidence amount to requests that we reweigh the evidence or assess credibility of the witness, which we cannot do. *See A.S.,* 920 N.E.2d at 806. Based on the foregoing, the trial court did not err in denying D.S.'s motion to correct error.

## Conclusion

[19] Sufficient evidence supports the trial court's issuance of the protective order and subsequent decision to allow it to become permanent. The trial court's denial of D.S.'s motion to correct error was not against the logic and effect of the facts and circumstances before the trial court. We affirm.

Affirmed.

May, J., and Bradford, J., concur.