# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 23 2018, 10:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew R. Falk
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryan L. Williams, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 23, 2018 <br><br> Court of Appeals Case No. 18A-CR-739 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Stephenie LeMay-Luken, Judge <br><br> Trial Court Cause No. 32D05-1710-CM-1428 |

**Altice, Judge.**

**Case Summary**

[1] Bryan Williams appeals his conviction for Class A misdemeanor invasion of privacy. He contends that the State failed to sufficiently rebut his mistake-of-fact defense.

[2] We affirm.

## Discussion & Decision

[3] Despite being divorced for several years, Lisa Wuerdeman and Williams lived together in 2017. Their relationship was marred by domestic violence. On or about October 17, 2017, Wuerdeman hurriedly departed the residence because she was scared of Williams, leaving a significant amount of property at the home. She obtained an ex parte order of protection (the Protective Order) against Williams that same afternoon.

[4] In the meantime, Williams sent a few text messages to Wuerdeman around 9:00 p.m. regarding the property she left behind. He noted that he could not believe all that she had left and indicated that he would give to Goodwill whatever he did not want. Wuerdeman did not respond to the messages.

[5] Williams was personally served with the Protective Order at 11:00 p.m., which prohibited him from, among other things, directly or indirectly communicating with Wuerdeman. The deputies serving the Protective Order gave Williams thirty minutes to gather his things and leave the home. Williams then drove to his mother's residence and slept in his vehicle with his dog.

[6]　At 5:35 a.m., Williams sent a text message to Wuerdeman. He stated, "You need go [sic] get your stuff". *Exhibits* at State's Exhibit 3. Wuerdeman contacted the Hendricks County Sheriff's Department to report the unauthorized contact. Deputy Andrew Thomas spoke with Williams later that day. Williams was verbally aggressive with the deputy but acknowledged being served with the Protective Order the previous night. Williams then indicated that he had mistakenly sent the text message to Wuerdeman when he was actually attempting to send a Facebook message to a friend. Deputy Thomas questioned him about how he could mix up both the names and apps involved, and Williams could not give him an answer.

[7]　On October 23, 2017, the State charged Williams with Class A misdemeanor invasion of privacy. At his bench trial on February 20, 2018, Williams acknowledged that he sent a text message to Wuerdeman, but he claimed that it was sent to her by mistake. Williams testified that he intended to send the message to Ralph, who had a trailer in Williams's backyard. Williams blamed the mistake on not wearing his "cheaters" (i.e., glasses) when sending the message. *Transcript* at 17. He then emphasized, "I know to leave her alone." *Id*. at 18. In rebuttal, Wuerdeman testified that Williams sent her another text message on October 21, 2017, asking her to call him. This message was entered into evidence as State's Exhibit 4, as she still had it on her phone. Williams denied sending this second message.

[8]　At the conclusion of the bench trial, the trial court found Williams guilty as charged and sentenced him to thirty days in jail. The court specifically stated,

"I do not believe you …contacted … Wuerdeman by mistake, I believe you did it intentionally." *Id*. at 27. Williams now appeals, arguing that the State failed to sufficiently rebut his mistake-of-fact defense.

## Discussion & Decision

When we consider a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of the witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). Instead, we consider only the evidence and reasonable inferences supporting the conviction. *Id*. We will affirm if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id*.

The State was required to prove beyond a reasonable doubt that Williams knowingly or intentionally violated the protective order. *See* Ind. Code § 35-46-1-15.1. Williams acknowledges that the State presented sufficient evidence in its case in chief that he committed invasion of privacy. He argues, however, that the State failed to overcome his testimony regarding mistake of fact.

Ind. Code § 35-41-3-17 provides: "It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." When the State has made a prima facie case of guilt, the burden shifts to the defendant to establish an evidentiary predicate of his mistaken belief of fact. *Chavers v. State*, 991 N.E.2d 148, 151 (Ind. Ct. App. 2013), *trans. denied*. "The State, however, retains the ultimate burden of proving beyond a reasonable doubt

every element of the charged crime, including culpability or intent, which would in turn entail proof that there was no reasonably held mistaken belief of fact." *Id*. at 151-52. "The State may meet its burden by directly rebutting evidence, by affirmatively showing that the defendant made no such mistake, or by simply relying upon evidence from its case-in-chief." *Id*. at 152.

[12] Williams's mistake-of-fact defense is based on his own self-serving claim that he intended to send the message to his friend, not Wuerdeman. Of course, the trial court was not required to believe him. *See id*. ("Any conflict in the evidence was for the trier of fact, the trial judge in this case, to resolve, and we will not disturb the trial court's credibility determinations on appeal."). In addition to the trial court's express disbelief of Williams's story, we observe that a review of the record reveals that the text message in question was a natural continuation of the messages Wuerdeman sent his ex-wife the previous evening before receiving notice of the Protective Order. Further, the State presented rebuttal evidence that Williams contacted Wuerdeman again via text message three days later, asking her to call him.[1] This evidence was submitted to impeach Williams's claim that he only texted Wuerdeman once by accident.

---

[1] Embedded within his sufficiency argument, Williams asserts that admission of this second message into evidence amounted to fundamental error. Then, without setting out the stringent fundamental error standard, he discusses a newly-alleged discovery violation regarding this impeachment evidence and a case having nothing to do with fundamental error. Williams has wholly failed to establish fundamental error.

[13]     We reject Williams's invitation to judge his credibility and reweigh the evidence. The State presented ample evidence in support of the conviction.

[14]     Judgment affirmed.

[15]     Brown, J. and Tavitas, J., concur.