

FILED

Dec 10 2020, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicole Slivensky
Lawrence County Public Defender
Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael T. McGill, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 10, 2020 <br><br> Court of Appeals Case No. 20A-CR-327 <br><br> Appeal from the Lawrence Superior Court <br><br> The Honorable John Plummer III, Judge <br><br> Trial Court Cause No. 47D01-1807-F6-1201 |

**May, Judge.**

[1]     Michael T. McGill appeals following his conviction of Class A misdemeanor residential entry.[1]  McGill raises two issues on appeal, which we revise, reorder,

---

[1] Ind. Code § 35-43-2-1.5; Ind. Code § 35-50-2-7.

and restate as: (1) whether the trial court abused its discretion when it excluded the results of an intelligence test from evidence; and (2) whether the State presented sufficient evidence to rebut McGill's mistake-of-fact defense. We affirm.

# Facts and Procedural History

[2] Around noon on July 27, 2018, Kenneth Ivey and his wife decided to leave their house in Bedford and visit the local Dollar General store. They shut both their front and back doors before leaving the house. They locked their front door and left their back door unlocked. They did not plan to be gone from the house for long, and they routinely left the back door unlocked when running short errands. Ivey and his wife started to drive toward the Dollar General store in their truck.

[3] A short distance from home, Ivey saw McGill and Janna McIntire walking side-by-side along the road. Ivey did not know McGill or McIntire, but he smiled and waved as he passed them. Neither McGill nor McIntire returned Ivey's greeting. In his rear-view mirror, Ivey saw McGill and McIntire start to walk up his driveway. Ivey turned around in a neighbor's driveway and drove back to his house.

[4] He pulled into the driveway and noticed the back door to his house was open. Ivey directed his wife to call 911, and he walked toward the house. Ivey then saw McGill and McIntire standing in his living room. Ivey started "yelling at

them. [He] asked them what they were doing in [his] home." (Tr. Vol. II at 170.) McIntire said, "We're not doing anything wrong." (*Id.*) McGill did not say anything during the encounter, and Ivey testified that McGill looked "scared." (*Id.* at 178.) Ivey continued to ask them to leave his house, and McIntire and McGill exited through the back door. Ivey watched McIntire and McGill walk down the street and into another house, which turned out to be McIntire's parents' house. A Lawrence County deputy sheriff spoke with Ivey and then arrested McIntire and McGill at McIntire's parents' house.

[5] The State charged McGill with Level 6 felony residential entry.[2] Prior to trial, the State filed a motion in limine seeking to exclude from evidence McGill's 2019 psychological assessment purporting to show that McGill's intelligence quotient ("IQ") was significantly below average. At a hearing on the State's motion, the State argued that the psychological assessment was irrelevant. The State also contended that the psychological assessment was not trustworthy because it was prepared near the time of trial and the assessment did not list the school psychologist's credentials or "how she works, what type of qualifications she has[.]" (Tr. Vol. II at 43.) McGill argued the psychological assessment was a self-authenticating record of a regularly conducted activity, and he maintained the assessment was relevant to whether McGill reasonably, although

---

[2] The State also charged McIntire with Level 6 felony residential entry under the same cause number. She pled guilty pursuant to a plea agreement, and the court imposed a one-year sentence, which it suspended to probation.

erroneously, believed he and McIntire had permission to enter Ivey's house. As
he explained,

> we're not arguing that Mr. McGill has a mental disease or defect
> that would undermine his ability to appreciate the wrongfulness
> of his conduct. We are instead arguing that he made a mistake
> and that mistake is reasonable based on his circumstances.
> We're not comparing him to a person with an IQ of 100 to make
> that mistake. We're comparing him to a person with the similar
> IQ, IQ of 67 who could make that mistake.

(*Id*. at 42-3.) McGill tendered the psychological assessment and an affidavit
purporting to authenticate the psychological assessment as a business record as
an exhibit at the hearing. The affidavit consisted of five numerical paragraphs:

> I, Sheila Switzer, on behalf of same, certify that:
>
> 1. I am the duly authorized custodian of the records for
> _____, and in such capacity, I have authority to
> certify the attached records.
>
> 2. The attached records are true and accurate copies of all
> original records maintained by Sheila Switzer regarding Michael
> McGill (Date of Birth: 12/11/1966) that were requested in
> connection with the above-captioned matter.
>
> 3. The statements in the records were made by Sheila Switzer for
> the purpose of recording an event, condition, or opinion.
> Namely, the statements describe an event in which Mr. McGill
> took psychological assessments to determine the range of a
> person's cognitive abilities. The statements describe Mr.
> McGill's conditions—namely, the extent of his cognitive
> abilities. And the statements describe Sheila Switzer's opinions

about the assessments that occurred and the results thereof. Sheila Switzer is a person with personal knowledge of the events, conditions, and opinions described in the records. The records were made at, or near, the time that the psychological assessments of Mr. McGill were conducted or at, or near, the time of Sheila Switzer's opinions.

4. The attached records were made and kept in the course of Sheila Switzer's regularly conducted business activity, and it was a regular practice of that business activity to make and retain records such as these.

5. This certification is given in lieu of my personal appearance at trial. I affirm, under the penalties for perjury, that the foregoing representations are true.

(McGill's Exhibit B) (blank space in original).

[6] The trial court took the matter under advisement and later granted the State's motion in limine. In its order granting the State's motion, the trial court stated:

> In the case-at-bar, the Defendant did not assert the affirmative defense of Mental Disease or Defect. As such, the Court grants the State's Motion in Limine Paragraph 4 regarding the psychological assessment(s) or evaluation taken of the Defendant in November of 2019, purportedly showing the Defendant has an IQ of 67 according to the Wechsler Adult Intelligence Scale (See Exhibit B). If the defense wanted to argue that the Defendant lacked the capacity to form the requisite mens rea due to a mental defect, the defense would have been legally required to properly file notice of its intention to interpose the defense of Mental Disease or Defect under I.C. 35-41-3-6 and I.C. 35-36-2-1. The court cites IRE 401, 402, and 403 in support of its ruling.

(App. Vol. II at 78.)

[7]     The trial court held a one-day jury trial on December 10, 2019, and in a hearing outside the presence of the jury, McGill made an offer of proof regarding the psychological assessment. He argued that he intended to introduce the assessment "to show that [McGill] has a lower IQ, and so a reasonable person with his IQ might interpret facts differently than someone with a normal IQ." (Tr. Vol. II at 190.) The following exchange occurred between McGill and the trial court regarding admissibility of the psychological assessment:

> [McGill's Counsel:] So the records show that Ms. Sheila Switzer (phonetic) performed an IQ test on Mr. McGill on November 20th. The results show that he has an IQ of 67.
>
> [Court:] Okay. And again, who was the person that conducted the test and what would be the foundation for the expertise of that particular individual?
>
> [McGill's Counsel:] We're just making an offer of proof what—
>
> [Court:] I understand. But the Court needs to understand the offer of proof.
>
> [McGill's Counsel:] It's that Ms. Switzer is a licensed school psychologist and she has performed those tests on school children before.
>
> [Court:] Okay. And your client is how old?
>
> [McGill's Counsel:] He's 52.

[Court:]  Thank you.  Go ahead.

[McGill's Counsel:]  It's a business record which has been certified by Ms. Switzer.

[Court:]  And she's not been listed as a witness, Ms. Switzer, to come in and testify subject to cross-examination; is that correct?

[McGill's Counsel:]  That's correct.  She certified the records according to 902(11), Indiana Rule of Evidence, and this evidence of Mr. McGill's IQ is relevant for the mistake of fact defense.  So it's relevant because under the affirmative defense standard of the reasonable person, it's about what the reasonable person would have believed at the time of the events.

[Court:]  How would the State challenge the evidence if you're not going to call a witness?

[McGill's Counsel:]  So the evidence is of a standardized test.  So the –

[Court:]  But what established the fact other than your statement to the Court?

[McGill's Counsel:]  That IQ is something that has been recognized for a really long time as an accurate—

[Court:]  What establishes the fact that the IQ testing was performed the proper way by the school psychologist?

[McGill's Counsel:]  The business records exception establishes that, that—

[Court:]  Doesn't that just authenticate the records, showing that they're true and accurate instead of indicating that this particular school psychologist was duly qualified to perform such an IQ test on the Defendant without being subject to cross-examination and the supportive law in this jury trial?

[McGill's Counsel:]  So the exception—well, she authenticated the records with the certification, and her license, which she provided on the evaluation portion, shows that she's qualified to perform this kind of evaluation that she's done.

[Court:]  On school children?

[McGill's Counsel:]  Yes, on school children, but also on adults. It's –the tests—

[Court:]  Where does it say that at?  In the proposed exhibit, where does it say that?

[McGill's Counsel:]  It shows what her license number is.

(*Id.* at 186-88.)  The trial court upheld its previous ruling excluding the psychological assessment from evidence, and the trial continued.  The jury returned a guilty verdict.  At McGill's sentencing hearing, the trial court entered judgment of conviction as a Class A misdemeanor pursuant to Indiana Code section 35-50-2-7 and imposed a sixty-four-day sentence, which was the time McGill served in pre-trial confinement.

# Discussion and Decision

# I. Admissibility of Intelligence Test

[8] McGill argues the trial court erred by excluding the results of his psychological assessment from evidence. Generally, the admission of evidence is left to the sound discretion of the trial court, and we review such rulings for an abuse of discretion. *Shoda v. State*, 132 N.E.3d 454, 460 (Ind. Ct. App. 2019). "A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id*.

[9] The trial court initially excluded the psychological assessment because McGill did not assert mental disease or defect as an affirmative defense. In Indiana, an individual "is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code § 35-41-3-6. However, "[l]ow mental capacity is not a defense to a criminal charge." *Hester v. State*, 512 N.E.2d 1110, 1112 (Ind. 1987). Indiana courts have long recognized that low intellectual ability is different from insanity. *See Wartena v. State*, 5 N.E. 20, 23 (Ind. 1886) ("[M]ere mental weakness, the subject of being of sound mind, is not insanity, and does not constitute a defense to crime. . . . Immunity from crime can not be predicated upon a merely weak or low order of intellect, coupled with a sound mind.") An intellectually disabled defendant cannot be sentenced to death, but the defendant is still criminally responsible for his actions. *Allen v. Wilson*, No. 1:01-CV-1658, 2012 WL 2577492, at *15 (S.D. Ind. July 3, 2012) (granting petition for a writ of habeas corpus and directing

state court to vacate defendant's death sentence and re-sentence him to an available sentence under Indiana law, excluding death). Therefore, the trial court's ruling on the motion in limine erroneously conflated low intellectual capacity with insanity.

[10] Nevertheless, a trial court's ruling on a motion in limine is not a final order. "A motion in limine is used as a protective order against prejudicial questions and statements being asked during trial. The ruling does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself." *Clausen v. State*, 622 N.E.2d 925, 927 (Ind. 1993) (internal citation omitted), *reh'g denied*. During McGill's offer of proof, the trial court expressed doubt regarding the psychological assessment's admissibility without Switzer as a sponsoring witness.

[11] Hearsay is "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evid. R. 801. Hearsay evidence is generally inadmissible. Ind. Evid. R. 802. However, there are numerous exceptions to the rule against hearsay. Indiana Evidence Rule 803(6) excepts from the rule against hearsay records of a regularly conducted activity:

> A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by—or information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The record of a regularly conducted business activity may be self-authenticated pursuant to Indiana Evidence Rule 902(11), which states:

Unless the source of information or the circumstances of preparation indicate a lack of trustworthiness, the original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification under oath of the custodian or another qualified person. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

As we have previously explained,

"Business records are an exception to the hearsay rule because they are imbued with independent indicia of trustworthiness." *Williams v. Hittle*, 629 N.E.2d 944, 947 (Ind. Ct. App. 1994), *trans. denied*. "These indicia are that the business establishes a routine of record-making, that the record is made by one with a

duty to report accurately, and that the business relies upon that record in carrying out its activities." *Id*.

*Embrey v. State*, 989 N.E.2d 1260, 1264 (Ind. Ct. App. 2013).

[12] Here, such indicia of trustworthiness is absent. The authentication affidavit does not identify a business entity or detail what routine business activity required Switzer to perform psychological assessments. The affidavit also does not explain how the maintenance of psychological records is necessary for a business purpose. The Rules of Evidence require expert opinion testimony to be rendered by a qualified individual relying on established scientific principles. Ind. Evid. R. 702. This requirement ensures that only relevant and reliable expert testimony is presented to the jury. *Beal v. Blinn*, 9 N.E.3d 694, 699 (Ind. Ct. App. 2014), *reh'g denied*, *trans. denied*. McGill attempts to sidestep these safeguards by introducing the psychological assessment into evidence without allowing the State to examine Switzer regarding her qualifications and methodology. McGill therefore failed to adequately authenticate the psychological assessment as a record of a regularly conducted business activity, and the trial court did not abuse its discretion in excluding the assessment from evidence. *See Walters v. State*, 120 N.E.3d 1145, 1156 (Ind. Ct. App. 2019) (holding phone records were not properly authenticated and therefore were inadmissible).

# II. Mistake-of-Fact Defense

[13] Even when the defendant asserts that he acted on a mistake of fact, the State must still meet its "ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent, which would in turn entail proof that there was no reasonably held mistaken belief of fact." *Chavers v. State*, 991 N.E.2d 148, 151-52 (Ind. Ct. App. 2013), *trans. denied*. The State may disprove an asserted mistake of fact by presenting evidence after the defendant's case-in-chief directly rebutting the defendant's claim or affirmatively showing the defendant did not make a mistake of fact. *Id*. at 152. The State may also rely on the evidence produced during its case-in-chief to counter the defense. *Id*. Whether the defendant made a mistake of fact is a question for the trier of fact, which we review like other challenges to the sufficiency of the evidence. *Saunders v. State*, 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006), *trans. denied*. We do not reweigh the evidence or judge the credibility of the witnesses, and we make all reasonable inferences in the light most favorable to the verdict. *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017), *aff'd on reh'g*. We will reverse "only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense." *Id*.

[14] McGill argues he mistakenly assumed he and McIntire were allowed to enter Ivey's house. He contends the State failed to put forth sufficient evidence to rebut his mistake-of-fact defense and to demonstrate beyond a reasonable doubt

that he acted with the requisite intent to commit residential entry.[3]  We disagree.  McGill never met Ivey before entering his house, and therefore, he did not have express permission from Ivey to enter the house.  McGill and McIntire saw Ivey's vehicle pull out of the driveway and drive past them before they entered Ivey's house.  As a result, the jury could draw a reasonable inference that McIntire and McGill surmised the house was empty but decided to enter it anyway.

[15]  McGill's own testimony also undercuts his mistake-of-fact defense.  He testified:

> [McGill's Counsel:] When you followed Janna into that house, did you believe you had permission to go in that house?
>
> [McGill:] Not at that present second, no.

(Tr. Vol. II at 203.)  McGill further explained:

> [State:] And you said that the first time you realized you weren't supposed to be in that house was when you noticed that no one was there; is that right?
>
> [McGill:] Yes.

---

[3] Indiana Code section 35-43-2-1.5 states: "A person who knowingly or intentionally breaks and enters the dwelling of another person commits residential entry, a Level 6 felony."  McGill does not dispute that he and McIntire opened the back door and entered Ivey's house.  *See McKinney v. State*, 653 N.E.2d 115, 117 (Ind. Ct. App. 1995) ("The use of the slightest force in pushing aside a door in order to enter constitutes a breaking through the doorway.").

[State:] Did you leave right away?

[McGill:] We walked around a little bit and we decided to leave.

[State:] And in fact, you didn't leave until [Ivey] walked in the house and started yelling at you, telling you to leave; is that correct?

[McGill:] Yes.

(*Id*. at 205.) McGill left only after the homeowner directed him to do so, and McGill did not offer any explanation to Ivey when Ivey confronted him. McGill's argument that he entered the house only because he thought McIntire had permission to enter Ivey's house is thus an invitation for us to reweigh the evidence, which we will not do. *See Woodson v. State*, 966 N.E.2d 135, 142 (Ind. Ct. App. 2012) (holding defendant's argument "is little more than a request to reweigh the evidence, which we will not do"), *trans. denied*. Therefore, we hold the State presented sufficient evidence for a reasonable jury to conclude McGill acted with the requisite culpability when he entered Ivey's house. *See Potter v. State*, 684 N.E.2d 1127, 1135 (Ind. 1997) (holding rape defendant's argument that he mistakenly believed victim consented was not reasonable).

# Conclusion

The trial court did not abuse its discretion when it excluded the Switzer's psychological assessment from evidence. McGill failed to properly authenticate the psychological assessment as a record of a regularly conducted activity. The

State also presented sufficient evidence to rebut McGill's mistake of fact defense. McGill testified that he did not believe he had permission to enter Ivey's house when he did so and that he remained in Ivey's house after realizing no one was home. Therefore, we affirm the trial court's judgment.

[17] Affirmed.

Riley, J., and Altice, J., concur.